**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thunderbird Downtown LLC, | No. CV-19-05287-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| City of Phoenix, *et al.*, | |
| Defendants. | |

At issue is Defendant City of Phoenix and individual Defendants James Mayes, Joshua States, and Robert Gawry's Motion to Dismiss (Doc. 53, "MTD"), to which Plaintiff Thunderbird Downtown LLC filed a Response (Doc. 63, "Resp.") and Defendants filed a Reply (Doc. 66). For the following reasons, the Court will dismiss Counts 1, 2, 4, 6, 7, 8, and 9 with prejudice and will stay Counts 3 and 5.

## I.   BACKGROUND

Plaintiff owns property located at 834 N. 2nd Avenue in Phoenix (the "Property"), which it acquired via quit claim deed in 2005. (Doc. 46, Third Amended Complaint ("TAC") ¶¶ 11-12.) The property consists of 17 one-bedroom or two-bedroom apartments. (TAC ¶¶ 13.) Plaintiff alleges that since taking ownership of the property, it has not made any additions with the exception of a storage area. (TAC ¶¶ 15-16.)

Defendants are the City of Phoenix (the "City") and City employees James Mayes, Joshua States, Robert Gawry, and Paul M. Li.[1] On January 8, 2018, the City received a

---

[1] Mr. Mayes and Mr. Gawry are Inspectors and Mr. States is a Field Supervisor for the City's Planning and Development Department. Mr. Li is an Assistant City Attorney. (TAC

complaint and subsequently opened an investigation into the construction of a sleeping room on the Property. (TAC ¶ 17.) The City found multiple violations of the Phoenix Building and Construction Code ("PBCC") and on September 4, 2018, served Plaintiff with a Stop Work Order for construction on Units 6 and 8. (TAC ¶ 19.)[2] The City detailed additional violations in its Citation Investigation 18027881. (TAC ¶ 24, Ex. 2.) Plaintiff alleges numerous issues with both documents, including that per the City's policy, it should have provided Plaintiff with a courtesy notice and that the Stop Work Order was brought under inapplicable provisions of the PBCC. (TAC ¶¶ 20-22.) Additionally, the Citation Investigation noted the Property's lack of a certificate of occupancy even though the majority of surrounding buildings do not have such a certificate. (TAC ¶¶ 48-52.)

On September 11, 2018, the City filed a Notice of Violation against the Property with the Maricopa County Recorder's Office. When Plaintiff contacted the City for more information, Mr. States responded, "the City will not pursue further court actions" (TAC ¶ 57.) In response to Plaintiff's further requests for information, Mr. Li wrote on January 29, 2019, "I am sorry I am not in position to answer your questions." Plaintiff alleges that the City never provided substantive evidence to support the alleged violations. (TAC ¶¶ 60-61.)

On February 1, 2019, the City served Plaintiff in Phoenix Municipal Court with four separate citations detailing a total of twelve violations (the "First Municipal Court Action"). The City's actions terminated Plaintiff's right to the appeals processes provided in the September 11 Notice of Violation. Subsequently, on July 18, 2019, the Maricopa County Superior Court granted the City's request for a search warrant of the Property, which the City executed on July 23, 2019. (TAC ¶¶ 92, 96.)[3] The First Phoenix Municipal

---

¶¶ 3-6.) While Mr. Li was not included in Defendants' Motion to Dismiss, the Court may consider the moving Defendants' arguments to the extent they apply to all Defendants. *See Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related.").

[2] Plaintiff fails to attach the September 4, 2018 Stop Work Order as an exhibit to the TAC and only alleges that it stated, "Units 6 and 8, single story apartments were constructed between 2015 and 2016." (TAC ¶ 19.)

1    Court Action was ultimately dismissed with prejudice on August 14, 2019. (TAC ¶ 86.)

2    However, the recorded Notice of Violation has not been removed from the Maricopa

3    County Recorder's Office, which impairs the value and use of the Property. (TAC ¶¶ 87-

4    88.) The City subsequently issued a new Stop Work Order containing thirty-eight

5    violations on September 12, 2019. (TAC ¶ 128.) Plaintiff alleges that the violations do not

6    meet the standard of "imminent hazards," the PBCC 2018 code under which the violations

7    are brought is inapplicable to portions of the property constructed prior to 2018, and there

8    are inconsistencies between the violations and the inspector's notes. (TAC ¶¶ 148-50, 152-

9    53, 158.)

10        On or around June 10, 2020, the City issued forty-three new violations and filed

11   fifteen new cases in Phoenix Municipal Court (the "Second Municipal Court Action").

12   (TAC ¶ 109; MTD at 3, Ex. 2.)[4]

13        Plaintiff filed its initial Complaint on September 30, 2019 and filed its First

14   Amended Complaint three days later (Docs. 1, 10). The Court granted Defendants' Motion

15   to Dismiss (Doc. 17, the "First Motion to Dismiss") on May 6, 2020 while also granting

16   Plaintiff leave to amend (Doc. 21, "Order"). Plaintiff filed its Second Amended Complaint

17   on May 29, 2020. (Doc. 24.). Defendants subsequently moved to dismiss (Doc. 27, the

18   "Second Motion to Dismiss") but prior to the Court's ruling, Plaintiff filed the operative

19   Third Amended Complaint on January 4, 2021. Defendants now move to dismiss, or in the

20   alternative, argue that the Court should abstain under *Younger v. Harris*, 401 U.S. 37

21   (1971) ("*Younger* Abstention").

22

23   _____
     [3]Plaintiff's Complaint states that the Superior Court granted the Request on July 18, 2020.
24   Based on Plaintiff's allegations, the Court believes Plaintiff intended to allege that the date
     was July 18, 2019.
     [4] Plaintiff states that the City initiated the Second Municipal Court Action on July 23, 2019.
25   However, this was the same day that the City executed the search warrant. Moreover, July
     23, 2019 came before the dismissal of the First Municipal Court Action. Defendants aver
26   that the City filed the Second Municipal Court Action on June 10, 2020 and provides the
     filings in support. (MTD at 3, Ex. 2.) Because the citations are a matter of public record,
27   the Court will take judicial notice and may consider them without converting the Motion
     into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89
28   (9th Cir. 2001). Importantly, the Court's legal conclusions do not depend on the date of the
     City's filing.

1

## II.    LEGAL STANDARD

A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint must thus contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III.    ANALYSIS

At the outset, the Court must address multiple issues. Defendants argue that Plaintiff's entire Third Amended Complaint should be dismissed but its Motion does not address Counts 3, 5, or 7. Defendants contend for the first time in their Reply that Count 5 does not state a claim for a Fourth Amendment violation, but the Court declines to consider such untimely arguments that leave Plaintiff with no opportunity to respond.[5] *See Sogeti USA LLC v. Scariano*, 606 F. Supp. 2d 1080, 1086 (D. Ariz. 2009). Therefore, the Court will not evaluate Counts 3, 5, or 7 for dismissal under Rule 12(b)(6).

Additionally, although the parties stipulated that Counts 3, 5, and 7 were subject to *Younger* Abstention (Doc. 49), Plaintiff appears to now argue that *Younger* does not apply. The Court will first address the claims subject to dismissal under Rule 12(b)(6). It will then address *Younger's* applicability to the remaining claims.

---

[5] Defendants' Second Motion to Dismiss argued for the dismissal of Plaintiff's Fourth Amendment claim. (Doc. 27 at 6-7.) However, Plaintiff has since amended that claim in its Third Amended Complaint. And whereas Defendant incorporated other portions of the Second Motion to Dismiss into the Motion at issue, it did not incorporate the portion regarding Plaintiff's Fourth Amendment claim. (MTD at 4 n. 11.) Accordingly, the Court will not consider the arguments made in the Second Motion to Dismiss.

### A.      First Cause of Action (Procedural Due Process)

In Count 1, Plaintiff alleges that Defendants violated the Due Process clause of the Fourteenth Amendment. because it did not provide Plaintiff the opportunity to appeal the Notice of Violation before filing the citations against Thunderbird in the First Municipal Court action. The Court previously dismissed Plaintiff's procedural due process claim, finding that Plaintiff failed to cite "any case law for the proposition that the City's actions violate federal constitutional due process" and did not address the balancing test outlined in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). (Order at 5.) The Court further noted that while a state or city may afford greater protections than the federal constitutional minimum, deprivation of those rights does not necessarily give rise to a cognizable federal due process claim. *Roybal v. Toppenish Sch. Dist.*, 871 F.3d 927, 933 (9th Cir. 2017). Plaintiff's Response does not contain case law nor does the Third Amended Complaint contain new allegations sufficient to alter the Court's previous analysis. Therefore, Plaintiff's procedural due process claim is dismissed.

### B.      First Cause of Action (Substantive Due Process)

Plaintiff further alleges in Count 1 that Defendants violated its rights to substantive due process. To state a claim for a Substantive Due Process violation pursuant to Section 1983, Plaintiff must "establish that the [government's] actions were arbitrary and irrational and had no relationship to a legitimate government objective." *City of Los Angeles v. McLaughlin*, 865 F.2d 1084, 1088 (9th Cir.1989) (citation omitted). "Mere negligence or lack of due care by state officials in the conduct of their duties does not trigger the substantive due process protections of the Fourteenth Amendment and therefore does not state a claim under section 1983." *Woodrum v. Woodward Cty., Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989).

Plaintiff alleges that the City altered records, fabricated witness information and identity, ignored exculpatory evidence, and fabricated alleged safety issues. (TAC ¶ 208.) However, it fails to provide additional facts to substantiate this conclusory allegation. Instead, Plaintiff makes broad pronouncements of misconduct that on closer inspection fail

to substantiate Plaintiff's claims. For example, Plaintiff alleges that Defendants ignored exculpatory evidence showing that certain units were built in 2006 and thus Plaintiff could not have been building new units as stated in the Inspector's notes. (TAC ¶¶ 21, 80-81, 107.) However, the exculpatory evidence merely consists of overhead photographs that appear labelled by unit. (TAC, Ex. 1.) Defendants had no obligation to give these photographs more weight than the opinion of its inspector. Likewise, in an apparent attempt to refute the Inspector's notes that Plaintiff made additions without a permit, Plaintiff alleges that the City last issued a building permit for an addition to the property in 1952. (TAC ¶ 82.) Plainly, this allegation does not contradict the Inspector's notes.[6] While the Court must take Plaintiff's allegations as true at this stage, it is not obligated to give undue weight to allegations or exhibits that purport to show more than they actually do.

Plaintiff further alleges that Defendants used older photographs of the balcony to show that it was deteriorating even though more recent photographs showed the balcony was fixed. (TAC ¶¶ 187-188.) And Plaintiff alleges that during the initial inspection, the City Inspector spoke to witnesses who were unaffiliated with the Property. (TAC ¶ 37.) While these allegations may be a viable defense in the Second Municipal Court Action, they do not show that Defendants willfully fabricated or ignored evidence and thus do not state a claim for the violation of Plaintiff's right to substantive due process.

### C.  Second Cause of Action – Regulatory Taking

In Count 2, Plaintiff alleges that Defendants' enforcement of the PBCC constitutes a regulatory taking in violation of the Fifth Amendment.

The Takings Clause of the Fifth Amendment provides that "private property shall not 'be taken for public use, without just compensation." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005). Plaintiff's claim of a regulatory taking is governed by *Penn. Central Transportation Co. v. New York City*, which considers three factors: (1) "[t]he

---

[6] There are countless examples of this throughout Plaintiff's Complaint. For example, Paragraph 35 of Plaintiff's Complaint states "The claim in the inspector's notes that Plaintiff was remodeling Unit 8 (all phases of remodeling) is patently false since they already claimed in the Stop Work Order that Unit 8 was built in 2015-2016." Plaintiff appears to contend that Plaintiff could not have been remodeling Unit 8 because it was built in 2015-2016. However, the two actions are not mutually exclusive.

economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action." 438 U.S. 104, 124 (1978).

Plaintiff's vague, conclusory allegations consist of boiler-plate language that "Defendants have frustrated distinct and reasonable investment-backed expectations of the Plaintiff and its actions have amounted to a direct appropriation or ouster of the Plaintiff's property rights." (TAC ¶¶ 218-219.) Plaintiff does not allege that Defendants' application of an overly onerous PBCC provision constitutes a regulatory taking. Rather, Plaintiff appears to allege that the Defendants' investigation and filing of violations pursuant to the PBCC constitute the taking. Plaintiff cites no case law in support of this theory. Through the Court's own research, it appears a plaintiff may state a claim where it shows the defendant brought the enforcement action or condemnation proceeding in bad faith. *See Sherman v. Town of Chester*, 752 F.3d 554, 565-66 (2nd Cir. 2014). However, just as Plaintiff fails to allege Defendants' actions were arbitrary and irrational for purposes of substantive due process, it also does not allege sufficient facts to illustrate that Defendants acted in bad faith. Rather, Plaintiff's allegations show a disagreement with Defendants' enforcement decisions. Therefore, the Court finds that Plaintiff failed to state a Fifth Amendment claim.

### D.    Fourth Cause of Action – Equal Protection Clause

In Count 4, Plaintiff asserts a "class of one" Equal Protection claim due to Defendants' unequal enforcement of the PBCC. For Plaintiff to sustain its claim, it must show that Defendants: "(1) intentionally (2) treated [Plaintiff] differently than other similarly situated property owners, (3) without a rational basis." *Gerhart v. Lake County*, 637 F.3d 1013, 1022 (9th Cir. 2011). While Plaintiff cites *Gerhart* in its Third Amended Complaint, it fails to address the elements in its Response or identify which allegations are sufficient to meet the standard for a class of one Equal Protection Claim. Plaintiff appears to allege two instances where Defendants treated it differently. First, the City allegedly allowed the construction of a garage that does not conform to the Phoenix Downtown

Zoning Ordinance. (TAC ¶ 235.) Second, Plaintiff alleges that although "upon information and belief" over thirty surrounding buildings do not have certificates of occupancy, the City cited Thunderbird's lack of certificate of occupancy in several of its violations. (TAC ¶¶ 48-52.) However, Plaintiff fails to identify a single building that does not have the requisite certificate. Nor does it provide detail on the information that led to this allegation. It also fails to allege that the buildings are "similarly situated." *Gerhart*, 637 F.3d at 1022. In sum, Plaintiff's vague and conclusory allegations are insufficient to show that Plaintiff is "being singled out by the government," raising "the specter of arbitrary classification." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602 (2008).

Plaintiff also appears to argue that PBCC 2012 114.2 (Ordinance G-5809) violates the Equal Protection Clause. PBCC 2012 114.2 states "nothing herein shall require the issuance of a notice of violation prior to commencement of emergency abatement or civil or criminal violation proceedings." Plaintiff alleges that this provision violates the Equal Protection Clause because it "assumes guilt or responsibility prior to any due process and allows the Defendants in this case to initiate as many violations and citations as they want without the required courtesy notices or notices of violation with the mandated time to correct." (TAC ¶¶ 171-173.) The Court disagrees. PBCC 2012 114.2 does not bar the Plaintiff from challenging the civil or criminal violation proceedings and thus there is no assumption of guilt. Plaintiff cites no case law to support the proposition that the commencement of such proceedings without notice violates a party's rights to equal protection under the law. Therefore, this allegation does not state an Equal Protection claim.

### E.    Sixth Cause of Action

In Count 6, Plaintiff alleges that the City is liable under 42 U.S.C. § 1983 for its failure to act to preserve Plaintiff's constitutional rights. To make out a claim, Plaintiff must establish that: "(1) he possessed a constitutional right of which he was deprived; (2) the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

Plaintiff alleges that "Upon information and belief it is official policy and practice by the City of Phoenix, to disallow, retaliate against and criminalize protected speech [sic] its residents who are unfairly targeted irrationally in violation of Equal Protection." (TAC ¶ 246.) Plaintiff fails to plead facts to show the existence of such a policy. Plaintiff contends that it need not allege additional facts, citing *Karim-Panahi v. Los Angeles Police Department,* 839 F.2d 621, 624 (9th Cir. 1988) for the proposition that a plaintiff merely needs to make a "bare allegation that the individual officers' conduct conformed to official policy, custom, or practice" in order to state a claim for municipal liability. However, *Karim-Panahi* was decided prior to the revised pleading standard outlined in *Twombly* and *Iqbal*, which make clear that bare conclusory allegations are insufficient to state a claim. *Twombly*, 550 U.S. at 555 ("formulaic recitation of the elements of a cause of action will not do.") Plaintiff cites no authority that municipal liability claims under Section 1983 are not subject to this new pleading standard. Therefore, the conclusory allegations in Plaintiff's complaint are insufficient to state a claim and Count 6 shall be dismissed.

### F.      Eighth Cause of Action – Excessive Fines

In Count 8, Plaintiff brings claims under the First, Fourth, and Eighth Amendments for the excessive fines imposed by the City. Plaintiff alleges that the City imposes fines of $2,500 per day per violation equaling approximately $2,925,000 per month, which it uses to retaliate against defendants who speak out and thus deter free speech. (TAC ¶ 273.)

The Eighth Amendment, applicable to the states through the Due Process Clause of the Fourteenth Amendment, provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Excessive Fines Clause limits the government's "power to extract payments, whether in case or in kind, as punishment for some offense." *United States v. Bajakajian*, 524 U.S. 321, 328 (1998).

Plaintiff alleges that the City imposed excessive fines for the building code violations. However, the Second Municipal Court Action is still pending and thus the City has not imposed a fine on Plaintiff as required for Plaintiff to bring a claim under the Eighth

Amendment. *Goodman v. United States*, 33 F.3d 1060, 1062 (9th Cir. 1994) ("the Eighth Amendment is not applicable until there has been a formal adjudication of guilt in accordance with due process of the law.") In response, Plaintiff cites case law outlining when a future injury satisfies the injury-in-fact requirement for standing. However, not one of the cited cases pertains to excessive fines under the Eighth Amendment.

Furthermore, Plaintiff's allegations pertaining to its First Amendment Claim are merely conclusory. Plaintiff alleges that the City uses retaliatory and excessive fines to deter the exercise of "fundamental constitutional rights to speak out and defend" oneself against the City. However, Plaintiff fails to allege any facts showing the City's behavior to be retaliatory or for the purpose of deterring Plaintiff's right to speak out. *Ashcroft*, 556 U.S. at 678.

Because Plaintiff fails to assert facts sufficient to show that the City violated the First, Fourth, or Eighth Amendments, the Court will dismiss Count 8.

**G.     Ninth Cause of Action – Sixth Amendment**

In Count 9, Plaintiff alleges that Defendants violated the Sixth Amendment when it did not inform Plaintiff of the complaining party's identity and failed to disclose exculpatory evidence. Additionally, Defendants failed to afford Plaintiff the right to be presumed innocent by condemning the balcony of the property with no valid evidence. (TAC ¶ 277.)

Plaintiff once again fails to allege facts sufficient to support its conclusory allegations regarding exculpatory evidence. And Plaintiff provides no case law to support the proposition that these allegations amount to a Sixth Amendment violation. Importantly, Plaintiff will have the opportunity to vindicate its rights in Municipal Court and will have the opportunity to appeal any adverse decision to the Superior Court. Therefore, the City's condemnation of the balcony and allegedly unjust appeals procedures do not violate Plaintiff's presumption of innocence. (Resp. at 16.)

As a result of these deficiencies, the Court will dismiss Count 9 for failure to state a claim.

1    **H.    Dismissal with Prejudice**

2         The Court finds that Plaintiff cannot plausibly amend the Complaint to cure the

3    defects in its claims against Defendants as it already has had multiple opportunities yet failed

4    to do so. As a result, the Court will dismiss the claims with prejudice. *See Lopez v. Smith*,

5    203 F.3d 1122, 1130 (9th Cir. 2000) (noting that leave to amend should not be given when

6    complaint's defects cannot be cured).

7    **I.    Younger Abstention – Counts 3, 5, and 7**

8         The Court finds that Younger abstention is appropriate for Count 3 (Malicious

9    Prosecution), Count 5 (Fourth Amendment violation), and Count 7 (Request for declaratory

10   and injunctive relief). Under *Younger*, a federal court may abstain so long as 'the federal

11   action would have the practical effect of enjoining the state proceedings." *Herrera v. City*

12   *of Palmdale*, 918 F.3d 1037, 1045 (9th Cir. 2019). When making this determination, federal

13   courts analyze whether the state civil enforcement proceedings: (1) are ongoing, (2) are

14   quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and

15   judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to

16   raise federal challenges." *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 727

17   (9th Cir. 2017). *Younger* abstention applies to claims for damages under Section 1983.

18   *Gilbertson v. Albright*, 381 F.3d 965, 979-80 (9th Cir. 2004).

19        Contrary to its previous stipulation (Doc. 49), Plaintiff now argues that *Younger*

20   does not apply to Counts 3, 5, and 7 because: (1) the Second Municipal Court Action is not

21   ongoing, (2) it will not provide a sufficient forum for Plaintiff to raise its constitutional

22   challenges, and (3) Defendants brought the enforcement proceedings in bad faith. (Resp.

23   at 1-6.) Additionally, Plaintiff separately contends that *Younger* is inapplicable to its Fourth

24   Amendment claim. (Resp. at 9-13.) Because Plaintiff previously stipulated to *Younger's*

25   applicability, the Court only will address Plaintiff's specific arguments as to why it does

26   not apply.

27        Plaintiff first argues that the Second Municipal Court Action is not ongoing because

28   "significant proceedings of substance" took place before Defendants filed the Second

Municipal Court Action. Specifically, Plaintiff filed its initial Complaint and Amended Complaint, the Court granted Defendants' initial Motion to Dismiss, and Plaintiff filed its Second Amended Complaint. (Resp. at 4-5.) However, whether a proceeding is ongoing is not determined by the amount of substantive proceedings. Rather, proceedings are "ongoing" if they are initiated "before any proceedings of substance on the merits have taken place in the federal court." *Hicks v. Miranda*, 422 U.S. 332, 349, 95 (1975). To make this determination, the Court must conduct a fact-specific inquiry examining the extent of the district court's involvement in the merits of the case. *Nationwide Biweekly Administration, Inc.*, 873 F.3d at 728-29.

Here, the facts show that the Court did not have substantive involvement in the case's merits prior to the City's filing of the Second Municipal Court Action on June 10, 2020. Plaintiff filed the Third Amended Complaint, which differs significantly from previous iterations, after the City initiated the Second Municipal Court action. Plaintiff's Malicious Prosecution claim first appears in the Third Amended Complaint and is partially based on the Second Municipal Court action. (TAC ¶¶ 224-25.) And while the Second Amended Complaint alleges a Fourth Amendment violation, the Court never addressed the merits of that claim because Plaintiff filed its Third Amended Complaint before the Court ruled on the Second Motion to Dismiss. The Court has only addressed the merits of Plaintiff's First Amended Complaint, which does not state a claim for a Fourth Amendment violation, and thus has never addressed the merits of Plaintiff's remaining claims. Because the Court's involvement in the merits of the Third Amended Complaint is in its "embryonic stage," *Hoye*, 653 F.3d at 844, the Second Municipal Court Action is ongoing for purposes of *Younger* abstention. *See Forty-One News, Inc. v. County of Lake*, 491 F.3d 662, 666-67 (7th Cir. 2007) (explaining that although the court had ruled on previous motions to dismiss, "nothing important relating to the merits has happened" where no discovery had occurred, and the court had not yet considered issues related to the merits of the case).

Furthermore, Plaintiff will have a forum to raise its federal constitutional challenges. To satisfy this prong, the enforcement proceeding or the subsequent appeal need only

- 12 -

provide "an adequate opportunity to raise constitutional challenges." *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Buckwalter v. Nev. Bd. of Med. Examiners*, 678 F.3d 737, 748 (9th Cir. 2012). Here, Plaintiff will be able to raise its Constitutional defenses in the Municipal Court action and vindicate its rights on appeal to the Superior Court.

Plaintiff appears to argue that the Municipal Court and Superior Court are insufficient because Plaintiff will not be able to bring Constitutional claims against the city for damages. (Resp. at 4-6.) This mistakenly conflates raising federal constitutional challenges as a defense to the City's enforcement action with bringing constitutional claims against the City. The latter is not required for *Younger* abstention. *See Gilbertson v. Albright*, 381 F.3d 965, 983 (9th Cir. 2004) (explaining *Younger* abstention is appropriate even where plaintiff could not obtain monetary relief through the state's enforcement proceedings because the federal court could stay rather than dismiss the federal damages action).

Finally, Plaintiff contends that *Younger* abstention is inappropriate because the City issued the citations in bad faith. (Resp. at 2-4.) "If state proceedings are conducted in bad faith or to harass the litigant, or other extraordinary circumstances exist, the district court may exercise jurisdiction even when the criteria for *Younger* abstention are met." *Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 621 (9th Cir. 2003). In the context of *Younger* abstention, bad faith "generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." *Id.* (quoting *Kugler v. Helfant*, 421 U.S. 117, 126 n. 6 (1975)). Plaintiff recites many of the same allegations to show bad faith, including that Defendants ignored exculpatory evidence. It also contends that Defendants brought the charges under statutory provisions that do not apply to the Property. While these allegations are potential defenses to the Second Municipal Court Action, they fail to show that the City brought the proceeding with the intention to harass or without a reasonable expectation of conviction. Therefore, Plaintiff has failed to show that *Younger* abstention is inappropriate due to the City's bad faith.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Separately, Plaintiff argues that Count 5 for violation of the Fourth Amendment is not subject to *Younger* because it "alleges several things outside of the proceedings themselves that constitute a violation of the Fourth Amendment." (Resp. at 10.) Plaintiff cites *Herrera* in support; however, *Herrera* is inapposite. There, plaintiffs brought their Fourth Amendment claim based on defendants' actions during its search of the hotel, alleging that multiple Los Angeles County sheriffs held the father and two children at gunpoint as well as other misconduct. *Herrera*, 918 F.3d at 1041. The Ninth Circuit held that finding in Plaintiff's favor would not "invalidate the basis for the code-violation enforcement proceedings" because "the Fourth Amendment claims arise from the defendants' search of the motel and subsequent entry onto the property to enforce the abatement proceedings." *Id.* at 1049.

To the contrary, the majority of Plaintiff's allegations in support of its Fourth Amendment claim focus on the veracity of the search warrant and are inextricably intertwined with the Second Municipal Court Action.[7] Plaintiff alleges that Defendants submitted a perjured affidavit in support of the search warrant, withheld exculpatory evidence from the Magistrate Judge, and that the search warrant's scope allowing Defendants to search the interior of the Property was overbroad because the affidavit only detailed violations on the Property's exterior. (TAC ¶¶ 105-107, 239-240.) Importantly, Plaintiff itself alleges that "[t]he Search Warrant was used to create the 38 new violations," which formed the basis for the Second Municipal Court Action (TAC ¶ 108.) To find that the search warrant is invalid would effectively enjoin the City's enforcement proceeding.

For these reasons, the Court finds that *Younger* abstention is appropriate for Counts 3, 5, and 7. Because Count 7 only requests declaratory and injunctive relief, the Court will dismiss it. Counts 3 and 5, which request damages, will be stayed pending the completion of the Second Municipal Court Action.

---

[7] Plaintiff does allege that the City "had 6-8 police cars, up to 17 armed police officers, and fire inspectors in attendance;" however, the majority of Plaintiff's allegations relate to the veracity of the search warrant as opposed to the search itself. (TAC ¶ 176.)

**IT IS THEREFORE ORDERED** granting in part Defendants' Motion to Dismiss. Counts 1, 2, 4, 6, 7, 8, and 9 shall be dismissed with prejudice.

**IT IS FURTHER ORDERED** Counts 3 and 5 shall be stayed pending the completion of the proceedings in the Second Municipal Court Action.

**IT IS FURTHER ORDERED** that the parties shall file a status report within five days of the completion of the proceedings in the Second Municipal Court Action or on January 7, 2022, whichever is sooner.

Dated this 10th day of September, 2021.

Honorable John J. Tuchi
United States District Judge

- 15 -